**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KATELYN HART,** | : | |
| | : | |
| Plaintiff, | : | No. |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| **TRUE CABLE HOLDINGS, LLC** | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **COMPLAINT**

Plaintiff Katelyn Hart, by and through undersigned counsel, brings this Complaint against Defendant True Cable Holdings LLC and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an employment discrimination, medical leave, and employee benefits interference action arising from Defendant True Cable Holdings LLC's termination of Plaintiff Katelyn Hart on April 30, 2026.

2. Defendant terminated Ms. Hart on the same day she returned to work from a pregnancy-related medical emergency and the day after she provided a doctor's note from her OB/GYN.

3. Defendant asserted that the termination followed Ms. Hart's "recent communication expressing that you no longer wish to continue in your current capacity as a Manager," and claimed it could not maintain her position in a non-managerial capacity or identify a suitable alternative role.

4. Defendant's stated reason was pretextual. Before the medical emergency, Ms. Hart had merely discussed potential internal opportunities, made clear she was not resigning, and remained open to staying in her role as long as needed to support the Company.

5. Defendant's termination of Ms. Hart violated federal law, including Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act and ERISA § 510, 29 U.S.C. § 1140.[1]

## II. PARTIES

6. Plaintiff Katelyn Hart is an individual residing in Bucks County, PA.

7. Defendant True Cable Holdings LLC is a limited liability company doing business as trueCABLE. Defendant's address is 12441 NE 41st Street, Suite 200, Kansas City, Missouri 64161.

8. At all relevant times, Defendant employed Ms. Hart and exercised control over the terms, conditions, compensation, benefits, leave, and termination of her employment.

9. Ms. Hart worked remotely from her personal residence for the duration of her employment with Defendant.

---

[1] Plaintiff will move to amend this complaint to include claims under the Pennsylvania Human Relations Act (PHRA), 43 P.S. §951, et seq., as amended, 1991, once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission. Any claims under the PHRA will be analyzed together. *Laverty v. Drexel Univ.*, No. 14-5511, 2016 U.S. Dist. LEXIS 6909, at *15 (E.D. Pa. Jan. 21, 2016) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

10. At all relevant times, Defendant was an employer covered by the federal employment discrimination laws.

11. At all relevant times, Defendant maintained an employee group health plan governed by ERISA.

## III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction in this case because Ms. Hart brings claims arising under federal law, including Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act("Title VII"), and ERISA § 510, 29 U.S.C. § 1140.

13. The District Court has jurisdiction over Ms. Hart's Title VII claims pursuant to 42 U.S.C. §2000e-5, 28 U.S.C. §1331, and 28 U.S.C. § 1343. The Court also has jurisdiction over Ms. Hart's ERISA claims under 28 U.S.C. § 1331.

14. All actions complained of herein took place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania, as the place in which the claims arose and a place where Defendant conducts business.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Ms. Hart worked in this District, the Defendant conducts business in this District, and the events giving rise to this action occurred in this District.

16. On June 8, 2026, Ms. Hart dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission, EEOC Charge No. 530-2026-07152.

17. On June 26, 2026, the EEOC issued a Notice of Right to Sue.

18. Plaintiff has satisfied her administrative prerequisites to file suit under Title VII, including filing a charge of discrimination with the Equal Employment Opportunity Commission and receiving a Notice of Right to Sue.

## IV. FACTUAL ALLEGATIONS

19. Defendant hired Ms. Hart in June 2022, and she served as a Manager in the Customer Success department.

20. During nearly four years of employment, Ms. Hart maintained no disciplinary history and received a high annual performance bonus in 2025.

21. Ms. Hart worked closely with Defendant's leadership team and was regarded as a high-performing employee.

22. In the summer of 2025, Defendant approved accommodations for Ms. Hart under the Pregnant Workers Fairness Act, and Defendant knew she was receiving fertility-related medical care.

23. In the summer of 2025, Ms. Hart provided the Defendant with a doctor's note stating she was receiving treatment for a medical condition related to pregnancy, childbirth, or a related medical condition.

24. Ms. Hart's doctor's note recommended that Ms. Hart take leave beginning July 11, 2025, with a part-time return starting July 28, 2025, and a full-time return on August 4, 2025, depending on her recovery progress.

25. Ms. Hart's accommodation request also included flexibility to attend medical follow-up appointments, including physical therapy and dietary consultations, as well as adjustments to physical activity or workload as needed.

26. Defendant approved and implemented those accommodations, placing Defendant on notice of Ms. Hart's pregnancy-related medical needs.

27. In March 2026, Ms. Hart traveled with leadership to Defendant's Kansas City headquarters and received positive feedback from Ann Harrison regarding the trip.

28. Approximately three weeks before her termination, Ms. Hart informed her manager, Ann Harrison, that she wanted to explore internal opportunities to continue her growth and contribution to Defendant.

29. Ms. Hart made clear that she was not resigning and was open to staying in her role as long as needed to support Defendant.

30. Ms. Hart's manager supported that discussion, and they discussed revisiting a potential sales role opening in June 2026.

31. Before Ms. Hart's medical emergency, Defendant did not express concern about her commitment to her role.

32. Ms. Hart became pregnant in March 2026.

33. On April 23, 2026, Ms. Hart experienced a sudden medical emergency requiring hospital care.

34. Ms. Hart immediately contacted her manager to advise that she would need to use sick time, and her manager told her to take as much time as needed.

35. Ms. Hart's treating OB/GYN provided a doctor's note excusing her from work on April 24, 27, 28, and 29, 2026, due to her medical condition.

36. Ms. Hart's pregnancy-related hospitalization and medically supported leave constituted, or placed Defendant on notice of the need for, protected medical leave.

37. During Ms. Hart's absence, Defendant's human resources department sent her a written notice requiring her to enter sick time in BambooHR, update her Slack status to "Out of Office," and provide medical documentation.

38. Ms. Hart explained that her absence resulted from a sudden medical emergency that made it impossible to plan ahead or complete administrative tasks while hospitalized.

39. Ms. Hart further advised that she had updated her Slack status to the preset "Out Sick" status created by Defendant and had notified her manager as soon as possible.

40. On April 29, 2026, Ms. Hart emailed Defendant's HR Generalist Martha Holleman and Ann Harrison in response to the written notice she had received while out.

41. Ms. Hart attached a note from her treating OB/GYN and informed Defendant that she had experienced a devastating medical emergency.

42. The April 29, 2026, note from Ms. Hart's treating OB/GYN placed Defendant on notice that Ms. Hart's underlying medical condition was obstetric in nature.

43. Defendant did not provide Ms. Hart with required leave notices, did not designate her leave as protected leave, and did not restore her to her position or an equivalent position after she returned from leave.

44. Ms. Hart returned to work on April 30, 2026, and Defendant terminated her employment effective immediately later that same day.

45. Ann Harrison signed Ms. Hart's termination letter.

46. The termination letter stated that the decision followed Ms. Hart's "recent communication expressing that you no longer wish to continue in your current capacity as a Manager," and claimed Defendant could not maintain her position in a non-managerial capacity or identify a suitable alternative role.

47. After her termination, Ms. Hart challenged Defendant's stated rationale, explaining that her internal transfer discussion had been enthusiastically supported, her timeline was flexible, and she had clearly communicated that she was not abandoning her current role.

48. Ms. Hart also stated that the timing of the termination, immediately following a pregnancy-related medical event, raised serious concerns.

49. On May 4, 2026, HR Generalist Martha Holleman stated that “prior to your email today and your mention of it in this morning’s meeting, the company was only informed that you would be ‘out sick’” and that “those factors played no role in the company’s decision-making process.”

50. That explanation is undermined by Defendant’s receipt of Ms. Hart’s treating OB/GYN’s note the day before termination and Defendant’s prior knowledge of Ms. Hart’s pregnancy-related medical needs.

51. Defendant is the plan sponsor, plan administrator, and sole funding source for its employee group health plan, which is self-insured and administered by Allied Benefit Systems, LLC as third-party claims processor.

52. As plan sponsor, Defendant had direct financial exposure for every claim paid under the plan and access to claims data through its plan administration function.

53. Ms. Hart’s health insurance claims during her employment were substantial, including fertility-related medical care.

54. The plan did not cover infertility treatment but did cover diagnostics, and a potential D&C procedure would have required prior approval.

55. Defendant terminated Ms. Hart at the precise moment she presented obstetric medical claims, eliminating her continued access to Defendant's self-funded health plan.

56. Defendant's stated reason for termination was false, incomplete, and pretextual.

57. Defendant terminated Ms. Hart because of pregnancy, childbirth, or a related medical condition, and because she used or needed medical leave connected to pregnancy or obstetric care.

58. Defendant terminated Ms. Hart for exercising, attempting to exercise, or invoking rights to protected medical leave.

59. Defendant also terminated Ms. Hart for the purpose of interfering with her attainment of rights and benefits under Defendant's self-funded employee health plan.

**COUNT I**
**Pregnancy Discrimination in Violation of Title VII, as Amended by the Pregnancy Discrimination Act**

60. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

61. Ms. Hart was qualified for her position and performed her job satisfactorily.

62. Ms. Hart had no disciplinary history, received a high annual performance bonus in 2025, worked closely with leadership, and was regarded as a high-performing employee.

63. Ms. Hart was pregnant and experienced a pregnancy-related or obstetric medical condition.

64. Ms. Hart became pregnant in March 2026 and experienced a sudden medical emergency requiring hospital care on April 23, 2026.

65. Defendant knew or had reason to know of Ms. Hart's pregnancy-related medical condition because Ms. Hart provided the Defendant with a note from her treating OB/GYN on April 29, 2026, that informed the Defendant she had experienced a devastating medical emergency.

66. Defendant also knew from prior approved accommodations that Ms. Hart had pregnancy-related medical needs.

67. Defendant subjected Ms. Hart to an adverse employment action by terminating her employment.

68. Defendant terminated Ms. Hart on April 30, 2026, the same day she returned to work.

69. The timing and circumstances of the termination support a reasonable inference of pregnancy discrimination.

70. Defendant did not raise concerns about Ms. Hart's role structure or commitment before her medical emergency, and terminated her only after she returned from a pregnancy-related hospitalization and provided a note from her treating OB/GYN.

71. Defendant's stated reason for termination was pretextual.

72. Defendant's actions violated Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

73. As a direct and proximate result of Defendant's unlawful conduct, Ms. Hart suffered damages, including lost wages, lost benefits, emotional distress, humiliation, anxiety, and harm to her career and professional reputation, punitive damages, attorneys' fees, costs, and other relief available under Title VII.

**COUNT II**

**Interference with Protected Benefit Rights in Violation of ERISA § 510, 29 U.S.C. § 1140**

74. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

75. At all relevant times, Ms. Hart was a participant in Defendant's employee group health plan.

76. Defendant sponsored, administered, and solely funded the self-insured employee group health plan.

77. Defendant had direct financial exposure for every claim paid under the plan and access to claims data through its plan administration function.

78. Ms. Hart had exercised, was exercising, and was expected to continue exercising rights under the health plan.

79. Ms. Hart's health insurance claims during employment were substantial, including fertility-related medical care.

80. At the time of termination, Ms. Hart had presented obstetric medical claims, and additional pregnancy-related claims were foreseeable.

81. Defendant terminated Ms. Hart's employment, thereby eliminating her continued participation in Defendant's employee health plan.

82. The termination occurred at the precise moment Ms. Hart presented obstetric medical claims, eliminating her continued access to Defendant's self-funded health plan.

83. Defendant acted with the specific intent, in whole or in part, to interfere with Ms. Hart's attainment of rights and benefits under the plan.

84. The timing of the termination, Defendant's direct financial exposure under the self-funded plan, Defendant's knowledge of Ms. Hart's medical needs, and the pretextual nature of Defendant's stated reason support an inference of unlawful interference.

85. The temporal proximity between the medical event, claim documentation, and termination, combined with the implausibility of the stated business justification, supports an inference that the termination was motivated at least in part by a desire to interfere with Ms. Hart's benefit entitlements.

86. Defendant's conduct violated ERISA § 510, 29 U.S.C. § 1140.

87. As a direct and proximate result of Defendant's unlawful conduct, Ms. Hart suffered damages, including loss of wages, loss of benefits, loss of health coverage, and other equitable and monetary relief, attorneys' fees, costs, and other relief available under ERISA.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Katelyn Hart respectfully requests that this Court enter judgment in her favor and against Defendant True Cable Holdings LLC and award the following relief:

A. A declaration that Defendant violated Title VII, as amended by the Pregnancy Discrimination Act;

B. A declaration that Defendant violated ERISA § 510, 29 U.S.C. § 1140;

C. Back pay, front pay, lost bonuses, lost benefits;

D. Equitable relief available under ERISA, including appropriate relief to remedy Defendant's interference with Plaintiff's protected benefit rights;

E. Compensatory damages for emotional distress, humiliation, anxiety, reputational harm, and other non-economic injuries;

F. Punitive damages for Defendant's reckless disregard of Plaintiff's federally protected rights;

G. Pre-judgment and post-judgment interest;

H. Attorneys' fees and costs; and

I. Such other and further relief as the Court deems just and proper.

**<u>REQUEST FOR JURY TRIAL</u>**

Plaintiff requests a jury trial for all applicable claims raised in this action.

Respectfully Submitted,

HARDWICK BENFER, LLC



Tiffanie C. Benfer (PA ID No. 202096)
2003 S. Easton Road, Suite 308
Doylestown, PA 18901
(T) 215.230.1912
(F) 445.282.5270
Attorney for Plaintiff

Date: August 27, 2026